### OELBERMANN *et al. v.* JARMAN *et al.*

*(Supreme Court, General Term, First Department.* December 29, 1890.)

1. SALE—DELIVERY ON MEMORANDUM—LIABILITY OF PURCHASER.

Goods delivered by plaintiffs to defendants in accordance with a proposal to send them "on memorandum," and which were accompanied by a bill on which was the word "memorandum," were stolen while in defendants' possession. In an action for the price, the evidence was conflicting as to whether, by the general understanding of the trade as to the meaning of the term "memorandum," the goods so delivered were at defendants' risk; but the testimony of one of defendants indicated that he regarded the goods as covered by the insurance on their property, and he referred to other goods delivered on like terms by other persons as "bought." *Held,* that the evidence was sufficient to sustain a finding by the jury that the goods were at the risk of defendants.

2. SAME—PLEADING—ALLEGATION OF BAILMENT.

The complaint in such action alleged a delivery of the goods on memorandum, to be held and returned by defendants at their risk during a reasonable time, and, if not returned within a reasonable time, to pay the value thereof. *Held,* that an admission of a bailment could not be implied from these allegations.

Appeal from circuit court, New York county.

Action by Emil Oelbermann and Louis F. Dommerich against William R. Jarman, David McQuillan, and Charles G. Otis. Defendants appeal from a judgment for plaintiffs entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Bliven & Bliven,* (*Edward M. Bliven,* of counsel,) for appellants. *Carter, Hughes & Cravath,* (*Charles E. Hughes,* of counsel,) for respondents.

VAN BRUNT, P. J. This action was brought to recover for the value of certain goods delivered on memorandum by the plaintiffs to the defendants, and afterwards stolen from the defendants' store; the question involved being whether the goods were in the possession of the defendants at their risk, or at the risk of the plaintiffs. It appears that shortly prior to the 27th of September, 1882, an employe of the plaintiffs, named Girond, went to the defendants' store in Brooklyn, and saw one of the defendants. The plaintiffs' employe, after looking through the stock of shawls of the defendants, suggested that there were no shawls of a particular kind among them. The defendant replied that the season was pretty well over for selling that kind of shawl, and he did not think they would be able to sell them. The plaintiffs' employe said: "Why don't you let me send over some Stellas, and mix with the others?" The defendant replied that he could not sell any Stellas, but the employe insisted: "Suppose I send them over anyway on memorandum; you need not pay for them until the goods are sold." And on the same day or the next the merchandise in question was received by the defendants from the plaintiffs, accompanied by a paper which was called a "memorandum bill." After the goods had been in the possession of the defendants for some weeks, they were stolen, and payment was demanded by the plaintiffs. The defendants denied their legal obligation, but promised to pay as soon as they were able. Evidence was offered to show what was meant by the words "memorandum" upon the bill of goods, both on the part of the plaintiffs and of the defendant. It is called, throughout the case, "proving a custom." The evidence on the part of the plaintiffs tended to show that goods delivered in this way were at the risk of the defendants, and the evidence on the part of the defendants tended to show the contrary. Under this conflict of evidence, the question was submitted to the jury, who found a verdict for the plaintiffs, and from the judgment and order thereupon entered this appeal is taken.

It is clear that the plaintiffs had the right to offer evidence tending to explain what was meant in the trade by the word "memorandum" in a bill of

that kind. If they succeeded in establishing, to the satisfaction of the jury, a general understanding among dealers in that class of goods in respect to the meaning of such a term, then the parties to this contract are supposed to have acted in the light of such an interpretation of the word. This was a question which the jury alone could determine upon the conflicting evidence; and upon an examination of the case it would appear that they came to a conclusion which was not inconsistent with the interpretation which the defendants themselves had placed upon this memorandum. The defendant who was examined was asked whether the plaintiffs' agent had asked them to insure these goods, and he answered: "I cannot positively answer now. He probably asked me whether we were sufficiently insured to cover these goods; and if he had asked me the question, I should have told him, ' Yes.'" Now, this evidence seems clearly to show that the insurance on the defendants' property would cover the goods in question. If they were at the plaintiffs' risk, how could this possibly be?

There is another piece of evidence which seems to indicate that the defendants placed this interpretation upon goods delivered on memorandum. The witness was testifying in regard to the call of plaintiffs' employe, Mr. Gorind, and he stated: "We had just started in business. I had gotten from another house in town, James McCreery & Co., by request, a consignment of India shawls on memorandum. Mr. Gorind had evidently seen our advertisement in regard to them, and called on me. He felt hurt that I had passed him in the matter. I told him I did not find his shawls as salable as the shawls I had bought from other parties, and for that reason I had passed him." The witness evidently considered that the shawls delivered by McCreery & Co. on memorandum had been bought. It seems clear from this evidence that the jury were right in finding that the delivery, under the circumstances shown upon this trial, was not a mere bailment or consignment, but that the goods, according to the understanding of the defendants themselves, were at their risk.

It is not necessary to discuss the question whether they were bailees or factors. It is clear that if they were simply bailees, or even factors, they were only liable for reasonable care in the custody of these goods. They were not claimed to be held for negligence as bailees, but, on the contrary, that, by the terms of the contract between them and the plaintiffs, the goods while in their possession were at their risk. They had an option to return them within a reasonable time, but if they did not return them they were liable for the price. It is not necessary to discuss the evidence at length; but there seems to have been sufficient for the jury to find, as they did, that the goods were at the risk of the defendants. It is urged that the plaintiffs are estopped from proving a sale by their admissions in the pleadings which implied a bailment, and not a sale, and that this admission cannot be contradicted on the trial. We have examined the pleadings in vain to find such an estoppel. The complaint alleges a delivery of these goods on memorandum, to be held and returned by the defendants at their risk during a reasonable time, and, if not returned within a reasonable time, to pay the value thereof. There are no allegations establishing a bailment contained in the complaint, but, on the contrary, it alleges the delivery of goods under a contract whereby the defendants were to pay for or return the same within a reasonable time. There are no exceptions contained in the case which seem to demand discussion, and the judgment and order appealed from should be affirmed, with costs. All concur.